CUMBERLAND COTTON CO. (WHIPPLE v.). See Case No. 17,515.

CUMBERLAND MANUF'G CO. (WHIPPLE v.). See Case No. 17,516.

---

## Case No. 3,471.
### The CUMBRIA.
[Nowhere reported; opinion not now accessible.]

---

## Case No. 3,472.
### The CUMBRIA.
[3 Ben. 334.][1]

District Court, S. D. New York. June Term, 1869.[2]

COLLISION IN HAMPTON ROADS BETWEEN STEAMERS—PARALLEL COURSES—LOOKOUT.

1. Where two steamers, the F. bound into Hampton Roads, and the C. bound out, were approaching a guardship at which each was required to report, both vessels heading on courses nearly parallel with the keel of the guardship, and the C. had the guardship on her starboard side, and made the white and red lights of the F. on her port bow, and the F. then changed her course, by starboarding, and slowed and stopped her engine for the purpose of speaking the guardship, and blew two blasts of her whistle, but the C. kept on, and struck the F. on her starboard side and sank her: Held, that the F. was in fault in not keeping a proper lookout, and also in changing her course across the bows of the C.

2. It was her duty to pass to the right, and let the C. pass between her and the guardship.

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[2] [Affirmed by the circuit court (case unreported).]

Townsend Scudder, for libellants.
Edward H. Owen, for claimants.

BLATCHFORD, District Judge. This libel is filed by the owners of the propeller Fannie, to recover the sum of $50,000 as the damages sustained by them by the sinking of that vessel by a collision between her and the steamer Cumbria, shortly after 8 o'clock p. m., on the 6th of May, 1864, near Fortress Monroe, in the Chesapeake bay. The Fannie was in the employ of the government, and carrying troops. She had come from Gloucester Point, in the York river, and was bound to Norfolk, Virginia. The Cumbria was also in the employ of the government, and had come from a wharf to the westward of Fortress Monroe, and was bound to Washington city. There was a guardship stationed between Fortress Monroe and the Rip-Raps, at which every passing vessel was required to report her name and voyage. The night was such as not to obscure lights, and the tide was flood at the time, running into Hampton Roads at the rate of from three to four knots an hour. The wind was from the eastward, blowing in the same direction in which the tide ran, and the guardship was lying with her head to the course of the tide. The collision took place when the Fannie was heading quartering across the stern of the guardship. The Fannie was struck on her starboard side by the Cumbria abaft her midship, and soon sank.

The case made by the libel is, that, as the Fannie approached the guardship, her engines were first slowed and then stopped; that, at that time, she headed about south southwest, and diagonally across the stern of the guardship; that when the Fannie had slowed her engines, the Cumbria was discovered coming out of the Roads, towards the starboard side of the Fannie; that, as the Cumbria approached nearer, the engines of the Fannie were stopped, for the purpose of speaking the guardship; and that the Fannie thereupon gave a signal by two blasts of her whistle, but the Cumbria came on, and struck her starboard side, cutting her down to the water's edge, and sinking her. The whole case made by the libel is, that the Fannie had a right to and did signal the Cumbria to starboard her helm, and that the Cumbria had time and room enough to do so, and failed to do so, and was in fault in thus causing the collision.

The case set up in the answer is, that the Fannie, before she arrived abreast of the guardship, was running with the tide, and heading about west, upon a course which would have left the guardship at a considerable distance on her port side, and would also have left the Cumbria, in passing, at a safe distance on the port side of the Fannie; that the Fannie, as she came up abreast of the guardship, took a sudden and rank sheer to the southward, and crossed the bows of the Cumbria diagonally between her and the stern of the guardship; that, when the Fannie signalled her intention to cross the bows of the Cumbria, and pass between her and the guardship, the Cumbria was too near to change her direction, in conformity with the signal, in time to avoid the collision; and that the Cumbria, on hearing the signal, instantly reversed her engine.

I am satisfied, on the evidence, that the Fannie and the Cumbria were approaching each other on courses that were substantially parallel to each other and to the keel of the guardship, and nearly end on, but yet that the course of the Fannie, if unchanged, would have left the Cumbria between her and the guardship. The Cumbria was steering a course parallel to the keel of the guardship, but so as to leave the guardship on her starboard side, when she saw the lights of the Fannie from one and a half to two points on her port bow, the guardship bearing about one point on her starboard bow. She saw at that time only the white light and red light of the Fannie. The signal from the Fannie soon afterwards came, and the green light of the Fannie came into view, and her red light was shut in. This indicated that she was starboarding. Her signal indicated her starboarding. She was coming with the tide, and even after she stopped her engines she had on a great deal of headway. The fact is, that the Fannie kept no proper lookout, and that she had lapped two-thirds of her own length on the guardship, and had stopped her engines, as testified to by her master, before she discovered the Cumbria. She sheered across the bows of the Cumbria, and went quartering across the stern of the guardship, from a course parallel to the keel of the guardship, without any regard to the approach of the Cumbria, or to the fact that the Cumbria was on her port bow. In any aspect, it was her duty to pass to the right, and to let the Cumbria pass unembarrassed between her and the guardship.

I do not credit the testimony of the pilot of the Fannie, that he saw the green light of the Cumbria before the Fannie sheered so as to bring her across the bows of the Cumbria to the starboard side of the latter. He was not examined until five years after the occurrence. His testimony does not agree with that of the master of the Fannie, which was taken only seventeen days after the collision, and he is contradicted by the witnesses who were on the Cumbria. I see no fault on the part of the Cumbria.

The libel must be dismissed, with costs.

This case was affirmed by the circuit court, on appeal, in February, 1871 [case not reported].

CUMMINES (BOALER v.). See Case No. 1,-584.

CUMMING (MERCHANTS' NAT. BANK v.). See Case No. 9,453.

CUMMING (PARSONS v.). See Case No. 10,-775.